IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

YOON JA KIM, Ph.D.,           )
                              )    No. 05 C 3138
            Plaintiff,        )
                              )    Judge Mark Filip
       v.                     )
                              )
SARA LEE BAKERY GROUP, INC.,  )
                              )
            Defendant.        )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Yoon Ja Kim, Ph.D. ("Dr. Kim" or "Plaintiff"), brings suit against Sara Lee

Bakery Group, Inc. ("Sara Lee" or "Defendant"), alleging patent infringement under 35 U.S.C. §

271. (D.E. 1.)[1] Before the Court is Sara Lee's motion to dismiss pursuant to Federal Rule of

Civil Procedure 12(b)(6). (D.E. 12.) For the reasons set forth below, the motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

I.     The First Action

The parties have been engaged in litigation in this judicial district for a considerable

period of time; that litigation substantially predates the filing of this suit and is, indeed, ongoing.

Specifically, in May 2001, Dr. Kim filed suit against The Earthgrains Company[2] (the "First

---

[1] The various docket entries in this case are designated "D.E. __."

[2] In August 2001, Sara Lee Corporation acquired Earthgrains in a stock purchase
transaction, and the combined bakery operations of Sara Lee Corporation and Earthgrains
became the Sara Lee Bakery Group, Inc., a wholly owned subsidiary of Sara Lee Corporation.
(*See* D.E. 12 at 2 n.3.) Sara Lee Bakery Group, Inc. has assumed the defense in the First Action,
in addition to being the Defendant in the case *sub judice*. Therefore, the Court refers to the
defendant in both lawsuits as "Sara Lee."

1

Action") for allegedly infringing Dr. Kim's United States Patent No. Re. 36,355 (the "'355 Patent"). (First Action, D.E. 1.)[3] The '355 Patent, which is entitled "Potassium Bromate Replacer Composition," describes itself as "a method of preparing potassium bromate replacer," which has its application in flour-based mixes, bases, breads and other flour-based products. (D.E. 1, Ex. A (abstract); D.E. 1 ¶ 13.) Dr. Kim alleged infringement of the '355 Patent, and identified specifically two Sara Lee products, D'Italiano Italian Bread[4] and Buttertop Wheat Bread. (First Action, D.E. 1 at 4.) In its answer to the initial complaint in the First Action, Sara Lee filed a counterclaim for declaration of non-infringement of the '355 patent. (*See* D.E. 12, Ex. C (answer and counterclaim) at 5 (seeking an order that defendant "has not infringed, and does not infringe, U.S. Patent No. RE 36,355.").)

After extensive litigation history not relevant to the matters before this Court, discovery in the First Action began in the Spring of 2003. (First Action, D.E. 31; First Action, 5/8/03 Order (no docket number, but appears unnumbered on docket sheet).) In June 2003, Sara Lee

---

[3] The following facts are taken from Plaintiff's Complaint. For present purposes, the Court accepts the allegations as true, as precedent instructs. The Court takes no position on whether the allegations are actually well-founded. Because of the arguments that the parties make in connection with the pending motion, the Court has found it necessary to refer to public court rulings and filings in the First Action (*i.e.*, Northern District of Illinois Case No. 01 C 3895, *Yoon Ja Kim v. The Earthgrains Co.*). The docket entries in the First Action are designated herein as "First Action, D.E. __." The Court notes that a district court may consider matters of public record, such as public court documents, without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *See, e.g., Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994) (collecting numerous circuit court cases).

[4] Plaintiff refers to this brand of bread as "D'Italia" in both her Complaint and her First Amended Complaint in the First Action; however, it appears that the brand in question is actually called "D'Italiano." (*See, e.g.*, First Action, D.E. 78 ¶ 13.) Therefore, unless the Court is quoting from Plaintiff's own filings, this opinion will refer to the brand in question as "D'Italiano," which appears to be the correct name. (*Accord* D.E. 20 at 3 (Plaintiff currently referring to the brand as "D'Italiano").)

2

propounded interrogatories to Plaintiff that, among other things, requested that Plaintiff identify each Sara Lee "product that Plaintiff contends infringes the claim, and describe how the product meets each element of the claim." (*See* D.E. 23, Ex. A (Def's First Set of Interrogs. to Pl., Interrog. No. 4); *see also* D.E. 23 at 2.) Plaintiff submitted answers to Sara Lee's interrogatories in September 2003; in response to the interrogatory requesting identification of infringing Sara Lee products, Plaintiff stated that Buttertop bread and D'Italiano bread were manufactured using the potassium bromate replacer composition described in the '355 Patent. (*See* D.E. 23, Ex. B at 8.) Plaintiff further averred that "[a]part from the products already identified in this interrogatory, Kim cannot at this time specifically identify each and every product by name, manufacturer, description and product code because Earthgrains has not yet produced its documents and information to Kim." (*Id.* at 9.)

The First Action proceeded through discovery. The docket reflects that discovery initially was scheduled to close in July 2003. (First Action, D.E. 31.) It appears that the district court extended this deadline, perhaps on its own initiative, to September 2003, and then extended it a second time until December 2003. (First Action, 7/9/03 Order (no docket number); 9/22/03 Scheduling Order (no docket number).)

On December 12, 2003, three days before the extended discovery period was set to close, Dr. Kim, through counsel, sought an extension of the discovery deadline. (*See* First Action, D.E. 38.) Dr. Kim's motion for extension of discovery was granted, with discovery extended until February 1, 2004. (First Action, D.E. 41.) A review of the docket in the First Action reveals that, as of December 2003, Dr. Kim never had sought to compel any discovery during the initial discovery period or any of the various extensions.

3

On January 30, 2004, or two days before the again-extended discovery period was set to close, Plaintiff filed a motion, which was agreed to by Sara Lee, for another extension of the discovery period. (First Action, D.E. 47.) That motion was granted as well. (First Action, D.E. 48.) Specifically, Magistrate Judge Mason, who was then and has been presiding over the First Action for all purposes since the parties consented to his jurisdiction in January 2004, extended the discovery period until May 1, 2004. (*Id.*)

During this discovery extension, in April 2004, Sara Lee produced to Dr. Kim 648 Sara Lee bread formulas containing ascorbic acid and food acid, which are the key ingredients in the '355 Patent. (*See* First Action, D.E. 88 at 4.) Although Dr. Kim notes that this production occurred in the final week of the discovery period, Dr. Kim did not request a further discovery extension after getting the formulas. The docket in the First Action also reflects that Dr. Kim had never filed any motion to compel this discovery during the final discovery extension, nor at any prior time in the case. (Sara Lee also does not appear to have filed any motions to compel). Fact discovery in the First Action closed on May 1, 2004 (*see* First Action, D.E. 48), and expert discovery closed on September 2, 2004. (First Action, Order 8/24/2004 (no docket entry).)

On December 7, 2004, Dr. Kim moved for leave to file an amended complaint in the First Action to add an infringement claim based on products sold under the Healthy Choice label and manufactured by Sara Lee under a license agreement with ConAgra. (First Action, D.E. 64 at 4.) The motion stated that "[s]imultaneous with the prosecution of this case, Dr. Kim pursued a similar action against ConAgra Foods Inc. . . . In *Kim v. ConAgra*, Kim accused, and the jury found, that ConAgra's 'Healthy Choice' bread formulas which Earthgrains strictly followed in the manufacture of breads under the 'Healthy Choice' brand infringed Kim's '355 patent." (*Id.* at

4

3.) Dr. Kim stated that she should be given leave to amend "to include Earthgrains' manufacture, sale and offer for sale of the 'Healthy Choice' breads as an 'Accused Product' . . . ." (*Id.* at 4.) In connection with the motion to amend, Plaintiff asserted that "it must be noted that no prejudice to the parties will occur as no further discovery is necessary based on the amendment to the complaint." (First Action, D.E. 64 at 4.)

> The trial court granted Plaintiff's motion on December 29, 2004, and stated:

> Fact discovery has been closed for seven months and expert discovery has been closed for three months. However, while expert discovery was still open, Earthgrains knew that plaintiff was claiming damages for the manufacture and sale of the Healthy Choice products. Indeed, both plaintiff's expert and defendant's expert addressed the Healthy Choice products in their respective reports. Therefore, we find that the amendment will not cause substantial prejudice to Earthgrains.

(First Action, D.E. 68 at 2.)

On January 3, 2005, Dr. Kim filed her First Amended Complaint, which alleged that Sara Lee manufactured and distributed "certain types of breads under at least the 'Healthy Choice' brands and the 'D'Italia' and 'Buttertop' brands (collectively 'Accused Products')," and that "the Accused Products . . . infringe the '355 patent." (First Action, D.E. 69 ¶¶ 6, 14.) The First Amended Complaint requested injunctive relief against Earthgrains for its infringing acts, as well as treble damages for those acts, interest, costs and attorneys' fees. (*Id.* at 4.)

On January 28, 2005, Sara Lee answered the First Amended Complaint (the "Answer to the First Amended Complaint") and asserted affirmative defenses. (First Action, D.E. 78.) In the Answer to the First Amended Complaint, Sara Lee reasserted its counterclaim pursuant to 28 U.S.C. §§ 2201, 2202, and maintained its global request for a declaratory judgment that Sara Lee did not and does not infringe upon the '355 Patent. (*See id.* at 8, ¶ 35; *id.* at 9 (requesting an

5

order "declaring that Defendant has not infringed, and does not infringe, U.S. Patent No. RE 36,355.").) Dr. Kim's "Reply to Defendant's Answer to Plaintiff's First Amended Complaint," filed on March 17, 2005, denied Sara Lee's non-infringement counterclaim, but it did not specifically identify any additional infringing products or formulas beyond the previously-identified Buttertop, Healthy Choice, and D'Italiano formulas named in the First Amended Complaint. (*See* First Action, D.E. 69 at 2-3; First Action, D.E. 84 at 3.) Nor does Dr. Kim suggest that she had amended her sworn interrogatory response—a response that specifically identified only the Buttertop bread and D'Italiano bread products as infringing (D.E. 23, Ex. B at 8), and that noted that further identification would not be possible until the defense produced requested documents. (*See id.*, Ex. B at 9.)

The parties briefed *Markman*/claim construction issues during the Fall of 2004. (*See* First Action, D.E. 54.) On January 10, 2005, Magistrate Judge Mason issued a *Markman*/claim construction opinion in the First Action. (First Action, D.E. 70.) On March 9, 2005, the court issued an order permitting Dr. Kim "to supplement discovery as to the new claim" added in the First Amended Complaint, *i.e.*, the claim relating to the Healthy Choice products, but the Court explicitly stated, consistent with Dr. Kim's representations in the motion to amend (D.E. 64 at 2) that Dr. Kim was "not allowed to issue or take new discovery." (First Action, D.E. 82.)

Dr. Kim ultimately supplemented her discovery responses on April 7, 2005, and identified some 450 infringing formulas, which included the 12 formulas used in the Accused Products. (*See* First Action, D.E. 88 at 1 n.1 (Dr. Kim's filing).) In response, Sara Lee filed a motion to bar evidence relating to the newly accused products (First Action, D.E. 86), which the court granted on May 12, 2005. (First Action, D.E. 89.) In his order, Magistrate Judge Mason

6

stated that:

> Earthgrains asks the Court to bar evidence of the newly accused products (the 438 formulas that do not relate to D'Italiano, Buttertop and Healthy Choice breads). In response, plaintiff argues that her amended complaint alleged infringement generally and did not limit plaintiff's ability to discover and accuse additional bread mixes. We disagree. When this Court entered our 12/29/04 order, we specifically noted that '[p]laintiff's original complaint alleges that Earthgrains' manufacture and sale of its D'Italiano and Buttertop breads infringes on plaintiff's '355 patent. Now plaintiff seeks leave to amend to allege that Earthgrains' manufacture and sale of two Healthy Choice breads (as a licensee of ConAgra) also infringes on the '355 patent.' Furthermore, in plaintiff's motion for leave to amend, plaintiff stated that she sought leave to amend her complaint to include Earthgrains' manufacture, sale and offer for sale of the Healthy Choice breads as an Accused Product. This Court only allowed the amendment as to the two Healthy Choice breads because both parties' experts had addressed these products.
>
> Plaintiff's attempt to vastly expand this case at this late juncture is unacceptable. Discovery is closed and despite plaintiff's claims to the contrary, we find that Earthgrains would suffer substantial prejudice if we were to allow evidence of the newly accused products to be introduced at trial. We find the arguments set forth in plaintiff's response brief to be completely unpersuasive. Accordingly, Earthgrains' motion to bar evidence relating to newly accused products is granted. At trial, plaintiff will only be permitted to introduce evidence of the D'Italiano, Buttertop and Healthy Choice bread products that are identified in the first amended complaint.

(*Id.* at 2.) In the wake of that ruling, Dr. Kim did not seek reconsideration from Magistrate Judge

Mason; nor did Dr. Kim move for discovery to be reopened in the First Action. Instead, on May

26, 2005, Dr. Kim filed the present lawsuit. (D.E. 1.)[5]

II. The Second Action

In the present matter (the "Second Action"), Dr. Kim's complaint (also, the "Second

---

[5] In August 2005, approximately three months after Magistrate Judge Mason issued his order barring evidence, Dr. Kim filed a "combined motion . . . to compel the production of documents, things and information and to modify the protective order" in the First Action. (First Action, D.E. 107.) This motion was denied, with Magistrate Judge Mason explaining that "[f]act discovery has been closed for over a year. . . ." (First Action, D.E. 113.)

Action Complaint") asserts that Sara Lee has infringed the '355 Patent in violation of 35 U.S.C. § 271. (D.E. 1 ¶ 14.) Dr. Kim seeks injunctive relief from the Court pursuant to 35 U.S.C. § 283. (*Id.* at 3.) In addition, Dr. Kim requests that, in accordance with 35 U.S.C. § 284, the Court award her treble damages, attorneys fees, interest and costs, and such other relief as the Court finds fair and proper. (*Id.* at 4.)

Defendant's motion seeks dismissal of the Second Action under Rule 12(b)(6) on the grounds that (1) Fed. R. Civ. P. 13(a) prohibits Plaintiff from asserting her claims, (2) the suit is duplicative, and (3) the suit is barred by the prohibition against claim splitting. (D.E. 12 at 2.) For the multiple, independent reasons set forth below, that motion is granted.

## LEGAL STANDARDS

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In ruling on a motion to dismiss, the court must assume all facts alleged in the complaint to be true and view the allegations in the light most favorable to plaintiffs. *See, e.g.*, *Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004). Dismissal for failure to state a claim is appropriate where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Application of Rule 12(b)(6) is a procedural question not pertaining to patent law, and therefore, the court applies the rule of the regional circuit—in this case, the Seventh Circuit. *See, e.g.*, *Showmaker v. Advanta USA, Inc.*, 411 F.3d 1366, 1367 (Fed. Cir. 2005); *Polymer Indus.*

8

*Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 937 (Fed. Cir. 2003). Given the applicable Federal Circuit law, however, the issue of which circuit's law to apply does not appear to be material in any event.

## DISCUSSION

I.     Rule 13 Prevents Plaintiff's Claim From Being Brought in the Second Action

Sara Lee argues that the Second Action should be dismissed because its allegations consist solely of compulsory counterclaims that Plaintiff should have and may only assert in the First Action. (D.E. 12 at 8.) The Court agrees.

Federal Rule of Civil Procedure 13(a) provides that:

> A pleading shall state as a counterclaim any claim which at the time of serving of the pleading, the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

*Id.* The Seventh Circuit employs the "logical relationship test" for determining whether two claims arise out of the "same transaction or occurrence" for the purposes of Rule 13(a). *See In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994) (citing *Burlington N. R.R. v. Strong*, 907 F.2d 707, 711 (7th Cir. 1990)). In this regard, the Seventh Circuit has repeatedly instructed that "'the words "transaction or occurrence" should be interpreted liberally in order to further the general policies of the federal rules and carry out the philosophy of Rule 13(a).'" *In re Price*, 42 F.3d at 1073 (quoting *Warshawsky & Co. v. Arcata Nat'l Corp.*, 552 F.2d 1257, 1261 (7th Cir. 1977)). *In re Price* further stated that "[t]he purpose behind the rule is judicial economy; to avoid a multiplicity of actions by resolving in a single lawsuit all disputes that ensue from a common factual background." *Id.* (citation omitted); *accord, e.g., Civix-DDI, LLC v. Expedia, Inc.*, No.

9

04 C 8031, 2005 WL 1126906, at *3 (N.D. Ill. May 2, 2005) (St. Eve, J.) (same). "[I]n the interests of judicial administration, a court will generally either stay its own proceedings or dismiss an action once it learns that the action before it is properly characterized as a compulsory counterclaim in another pending federal action . . . . " *Inforizons, Inc. v. VED Software Servs., Inc.*, 204 F.R.D. 116, 118 (N.D. Ill. 2001) (Alesia, J.) (citing *Galileo Int'l P'ship v. Global Vill. Communication Inc.*, No. 96 C 3554, 1996 WL 452273, at *2 (N.D. Ill. Aug. 8, 1996) (Plunkett, J.) (collecting cases)); *accord, e.g., Multiut Corp. v. Dynergy, Inc.*, No. 04 C 8283, 2005 WL 1041324, at *2 (Darrah, J.) (citing *Inforizons, Inc.*, 204 F.R.D. at 118).

A. Federal Circuit Law Makes Plaintiff's Claim in the Second Action A Compulsory Counterclaim in the First Action

The Federal Circuit has addressed the question of when, once a litigant has sought a declaratory judgment for non-infringement, an infringement counterclaim is compulsory under Rule 13(a). In this regard, for example, *Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935 (Fed. Cir. 2003), restated the rule that "[w]hen the same patent is at issue in an action for declaration of noninfringement, a counterclaim for patent infringement is compulsory and if not made is deemed waived." *Id.* at 937 (citing *Vivid Technologies, Inc. v. American Science & Eng'g, Inc.*, 200 F.3d 795, 802 (7th Cir. 1999)). The Federal Circuit explained that:

Rule 13(a) makes an infringement counterclaim to a declaratory judgment action for noninfringement compulsory. In addition, this court finds that the compulsory nature of an infringement claim in response to a declaratory judgment action for patent noninfringement and the resulting waiver and bar that occurs if not exercised warrant a uniform national rule.

*Polymer Indus.*, 347 F.3d at 938 (citation omitted); *accord, e.g., Schinzing v. Mid-States Stainless, Inc.*, 415 F.3d 807, 813 (8th Cir. 2005) (applying *Polymer Indus.*). The Federal Circuit

propounded this rule after reviewing case law that showed that the situation "readily meets all of the four tests . . . used by the various circuit courts, any one of which renders a counterclaim compulsory." *Id.* at 938 (internal punctuation omitted) (discussing *Vivid Technologies*, 200 F.3d at 801, where the court found that a counterclaim for patent infringement, in an action for declaration of noninfringement of the same patent, met all relevant tests for rendering a counterclaim compulsory, including *inter alia*, the logical relationship test employed by the Seventh Circuit).[6]

The rule announced in *Polymer Indus.* was not a new one and was in keeping with well-established precedent relating to compulsory counterclaims in the context of patent law. *See, e.g., Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 947 (Fed. Cir. 1993) (noting that where plaintiff brought action for declaratory judgment of noninfringement, defendant "must bring its charges of patent infringement against Genentech [plaintiff] or be forever barred from doing so."), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *id.* at 938 ("[T]he compulsory counterclaim rule is particularly directed against the failure of a party to assert a counterclaim in one action, followed by the institution of a second action wherein the counterclaim is the basis of the complaint.") (citing *Southern Construction Co. v. Pickard*, 371 U.S. 57, 60 (1962)); *Int'l Video Corp. v. Ampex Corp.*, 484 F.2d 634, 635 (9th Cir. 1973) (recognizing that counterclaim for patent infringement was compulsory where complaint sought

---

[6] *Polymer Indus.* highlighted that, in this instance, the issue of when Rule 13(a) should be invoked was appropriately resolved by the Federal Circuit, given the essential relationship between the Federal Circuit's exclusive statutory mandate and the procedural issue. *Id.* at 938 (citing *Biodex Corp. v. Loredan Biomedical, Inc.*, 946 F.2d 850, 858-59 (Fed. Cir. 1991)); *see, e.g., Schinzing v. Mid-States Stainless, Inc.*, 415 F.3d 807, 813 (8th Cir. 2005) (noting that the Federal Circuit in *Polymer Indus.* was setting forth a "uniform national rule").

declaratory judgment of noninfringement); *Azkona Inc. v. Du Pont Nemours & Co.*, 662 F. Supp. 603, 618 (D. Del. 1987) ("In the instant case, both the declaratory judgment and the counterclaim arise out of the same patents and both seek to define the scope and determine the validity of those patents. Such a situation is clearly within the mandate of Rule 13(a).") (citation omitted)). The Federal Circuit's teaching in *Polymer Indus.* and *Vivid Technologies* has been rearticulated by that court as well—for example, in *Capo, Inc. v. Dioptics Med. Prods.*, 387 F.3d 1352 (Fed. Cir. 2004), which stated, "[i]n an action for declaration of non-infringement, a counterclaim for patent infringement is compulsory and if not made is deemed waived." *Id.* at 1356 (citing *Vivid Technologies*, 200 F.3d at 802)).

The principles enunciated by the precedent of the Federal Circuit and Seventh Circuit dictate that Dr. Kim's instant suit should be dismissed. In the First Amended Complaint in the First Action, Dr. Kim named three specific brands of Sara Lee products that infringed the '355 Patent. (First Action, D.E. 69 ¶ 6.) In its Answer to the Plaintiff's First Amended Complaint, Sara Lee broadly counterclaimed for a declaratory judgment of noninfringement regarding the '355 Patent. (*See* First Action, D.E. 78 at 7.) Dr. Kim's "Reply to Defendant's Answer to Plaintiff's First Amended Complaint" did not in turn assert or claim in response that any other Sara Lee brands or products infringed of the '355 Patent. Nor, until approximately one year after discovery closed, did Dr. Kim seek to amend her interrogatory response that specifically identified only the Buttercup and D'Italiano products, and that reflected Dr. Kim's awareness that other Sara Lee products were potentially infringing.

Thereafter, Dr. Kim brought the instant, Second Action, alleging infringement by Sara Lee of the '355 Patent. (D.E. 1.) Thus, as the plaintiff attempted to do in *Polymer Indus.*, Dr.

12

Kim is trying to bring infringement claims in a second lawsuit against the same patent and the same set of a putative infringer's products that were put at issue by the Defendant's counterclaim for a judgment of noninfringement of the '355 patent in the First Lawsuit. *See Polymer Indus.*, 347 F.3d at 937. Accordingly, under Federal Circuit law, and consistent with Rule 13(a)'s purpose of avoiding the spawning of multiple actions from a common factual background, the claims in the Second Action are compulsory counterclaims in the First Action, and the Second Action therefore merits dismissal. *See id.; accord, e.g., Capo, Inc.*, 387 F.3d at 1356-57 (finding that, where plaintiff filed an action for a declaratory judgment of noninfringement, produced samples of the product at issue to the defendant, and sought through discovery to ascertain which patents the defendant might assert against the product, the defendant's counterclaims of infringement were compulsory and defendant could not "avoid a declaratory action by refusing to file the counterclaim."); *Civix*, 2005 WL 1126906, at *3 ("Under Federal Circuit law, Civix's new claims of infringement were compulsory counterclaims to Defendants' declaratory judgment claims of noninfringement. Therefore, Rule 13(a) requires Civix to assert its new claims in the Initial Action and not in a separate law suit."); *see generally Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 700-01 (2d Cir. 2000) (finding that, in second suit between the same parties, the anti-trust claims brought by plaintiff were compulsory counterclaims that it should have raised in the answer in the first suit, and noting particularly that all the facts at issue in the second suit were known at the time of the first suit, and were in fact pleaded and dealt with in the first suit).

It bears mention that, at times in Dr. Kim's response to the pending motion to dismiss, Dr. Kim argues that Magistrate Judge Mason erred in too narrowly reading the averments in her

13

complaints in the First Action, or erred in his estimation of the diligence of Dr. Kim in seeking to amend her interrogatory responses. (*See, e.g.*, D.E. 20 at 2 (stating that, in the First Action, "Dr. Kim's Complaint and Amended Complaint properly allege patent infringement generally, notwithstanding any of Judge Mason's conclusions to the contrary . . . . ); *id.* ("Dr. Kim made reasonable efforts to supplement her infringement contentions in the [First Action] and, in particular, to include in that action at least some of the products at issue in this action . . . .").) At times, Dr. Kim also appears to be complaining about the performance of her former attorneys in the First Action (she changed counsel in January and March of 2005 (First Action, D.E. 75 and 83)) and/or various discovery rulings in the First Action. (*See, e.g., id.* at 4 (suggesting that certain disclosures really were not dilatory because they occurred "approximately two weeks after Dr. Kim's *current counsel* gained access to the 648 formulas," notwithstanding that the formulas were produced to Dr. Kim and her former counsel almost a year earlier) (emphasis added); *id.* at 10 n.9 (complaining of lack of access by Dr. Kim to certain discovery materials in the First Action).) These various complaints *might* be (this Court takes no view) of some use to Dr. Kim: for example, she is free, like any dissatisfied litigant, to appeal in the First Action at an appropriate time. *See generally* 28 U.S.C. §§ 1291-92; *accord, e.g., Oxbow Energy v. Koch Indus., Inc.*, 686 F. Supp. 278, 282 (D. Kan. 1988) (dismissing second action between parties and stating that, if plaintiffs believed they were unfairly precluded from proceeding on all claims in the first action "the proper course for plaintiffs is to appeal . . . once [the earlier action] is concluded."). However, Dr. Kim's complaints do not justify denial of Sara Lee's well-founded motion to dismiss this suit. *Accord id.* ("The fact that Judge Crow did not allow plaintiffs to proceed on all claims [in the first action] is not a persuasive reason for granting plaintiffs the

14

right to proceed in a second action. To allow such an approach would defeat the purpose of the

rule against splitting causes of action. . . .").[7]

B.  Judicial Estoppel Should Not Apply Because Defendant's Positions In The Two
Actions Are Not Inconsistent

Plaintiff argues that Sara Lee should be judicially estopped from arguing that the products

alleged to infringe the '355 Patent in the Second Action were also at issue in the First Action.

(*See, e.g.*, D.E. 20 at 12); *see also Johnson v. Exxon Mobil Corp.*, No. 02 C 5003, 2004 WL

419897, at *4 (N.D. Ill. Feb. 2, 2004) (stating that the first element required to apply judicial

estoppel is that "the later position is clearly inconsistent with the earlier position." ). Plaintiff

asserts that Sara Lee's position in the Second Action—namely, that Sara Lee's declaratory

judgment counterclaim put in play in the First Action products beyond the three specified

brands—is "clearly inconsistent" with Sara Lee's position in the First Action—namely, that the

magistrate judge should bar evidence relating to formulas outside of the three bread brands

named in Dr. Kim's First Amended Complaint and/or interrogatory response. (*See id.* at 12-13.)

The Court respectfully disagrees with Dr. Kim, and declines to apply judicial estoppel because

---

[7] Dr. Kim also suggests that if she is not allowed to litigate these claims, which she
steadfastly maintains that she already put at issue in the First Action (*see, e.g.*, D.E. 20 at 2, 3,
10), the result would be "unfair" (*id.* at 10), "unjust" (*id.* at 9), and "unreasonable." (*Id.* at 12.)
However, and without passing on any issues that Dr. Kim might raise on appeal in the First
Action, it is commonplace for a litigant to compromise issues or entire cases by failure to
promptly pursue a case or issue or piece of evidence in discovery. For example, defendants can
suffer default judgments if they do not promptly respond to cases filed against them. Likewise,
any litigant must move with responsible expedition during discovery, and must utilize ordinary
tools if their adversary is being unreasonable (for example, a motion to compel), or that litigant
may lose the ability to obtain even critical evidence. Judges generally tend to be fairly generous
about discovery extensions, but in the First Action, there were at least two discovery extensions
afforded to Dr. Kim upon her request, and there appear to have been at least four discovery
extensions overall. At some point, even the most understanding judge will find it necessary to
close the discovery period and to leave the record as it has been assembled to that point.

Sara Lee's position in this case is not inconsistent with its position in the First Action.

In the First Action, Sara Lee moved to bar evidence relating to the additional 438 formulas Plaintiff produced in her supplemental discovery responses of April 7, 2005. (*See* First Action, D.E. 86.) Sara Lee moved to bar evidence of these formulas because of the untimeliness of Plaintiff's accusation via the discovery supplementation and the unfairness that would result to Sara Lee if evidence of the additional products was permitted at trial. (*See, e.g., id.* at 1 (explaining that Sara Lee had relied on earlier discovery responses which did not identify virtually any of the 450 products or formulas, notwithstanding that those formulas had been produced to Dr. Kim); *id.* at 3 ("Now, a year after discovery was closed, the plaintiff seeks to accuse 450 more products of infringing on her patent, providing new [sic] excuse or attempted showing of good cause for her delay.").) Magistrate Judge Mason, in his ruling, also stressed the belated and untimely nature of Dr. Kim's effort to fundamentally transform the case by expanding her interrogatory response. (*See* First Action, D.E. 89 at 2 ("Plaintiff's attempt to vastly expand this case *at this late juncture* is unacceptable. Discovery is closed and despite plaintiff's claims to the contrary, we find that Earthgrains would suffer substantial prejudice if we were to allow evidence of the newly accused products to be introduced at trial.") (emphasis added).)

Precedent teaches that the threshold for prevailing on a judicial estoppel argument regarding inconsistency is high—the two positions must be "clearly inconsistent." *United States v. Christian*, 342 F.3d 744, 747 (7th Cir. 2003) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). In the instant case, the Court finds no meaningful inconsistency between Sara Lee's positions in the two actions. *See, e.g., Christian*, 342 F.3d at 749 (rejecting claim of judicial

16

estoppel based on a failure to find an inconsistency between the two positions taken by the government).

Accordingly, the Court concludes that Plaintiff's claim of infringement in the Second Action should have been brought as a Rule 13(a) compulsory counterclaim in the First Action. *See, e.g., Capo, Inc.*, 387 F.3d at 1356-57; *Polymer Indus.*, 347 F.3d at 937. Therefore, the Court grants Sara Lee's motion to dismiss the Second Action. *Accord, e.g., Inforizons, Inc.*, 204 F.R.D. at 118.

II.     The Second Action Should Be Dismissed Because It Is Duplicative of the First Action

Defendant argues that the Second Action should be dismissed for the independent reason that it is duplicative of the First Action. The Court agrees that the Second Action is duplicative of the First Action and that dismissal is also warranted on this basis.

"[A] federal suit may be dismissed 'for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court.'" *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (quoting *Ridge Gold Standard Liquors v. Joseph E. Seagram*, 572 F. Supp. 1210, 1213 (N.D. Ill. 1983) (collecting cases)). Precedent instructs that district courts have "a great deal of latitude and discretion in determining whether one action is duplicative of another." *Serlin*, 3 F.3d at 223 (citation and internal quotation marks omitted). As a general rule, a suit is duplicative if "the claims, parties and available relief do not significantly differ between the two actions." *Id.* (citation and internal quotation marks omitted).

A.     The Two Actions Involve The Same Parties And The Same Claims

As discussed above, in the First Action, Plaintiff's First Amended Complaint claims

17

infringement of the '355 Patent and specifically identifies three brands, Healthy Choice, D'Italiano and Buttertop (First Action, D.E. 69 ¶ 6), consistent with the narrowing and framing of the dispute that had occurred during discovery.[8] In addition, Sara Lee's counterclaim for a declaratory judgment of noninfringement puts before the court in the First Action all other potentially infringing Sara Lee products and brands, including the approximately 650 formulas produced in discovery. (*See* First Action, D.E. 78 at 7 (requesting an "order declaring that Defendant has not infringed, and does not infringe, U.S. Patent No. RE 36,355," *i.e.*, the '355

---

[8] As Dr. Kim's current counsel surely appreciate, notwithstanding the flavor of some of the rhetoric in their brief, the narrowing of a case and the identification of the actual heart of the dispute through interrogatories and requests to admit is commonplace. It is settled that plaintiffs in the federal notice-pleading regime are allowed to advance potentially sweeping claims in very general terms. *See, e.g., Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999) ("All that's required to state a claim in a complaint filed in a federal court is a short statement, in plain (that is, ordinary, non-legalistic) English, of the legal claim . . . . The courts keep reminding plaintiffs that they don't have to file long complaints, don't have to plead facts, don't have to plead legal theories.") (collecting authorities). The litigants are thereafter expected to use the panoply of discovery devices, such as interrogatories and requests to admit, to delimit the contours of the dispute that actually will be pursued. Furthermore, discovery responses must be seasonably amended, with reasonable promptness, or a litigant's inaction can have consequences with respect to the litigant's position.

If Dr. Kim is found to be unable to meaningfully advance infringement claims concerning the other Sara Lee formulas in the First Action, she will have no cause to complain if that inability is the product of her own decisions, actions, and non-actions. That inability potentially would be the product of any number of factors—including cost-benefit assessments concerning litigation costs made before the successful ConAgra verdict came in, litigation strategy calls by Dr. Kim and her former counsel, and/or failure to diligently pursue and seek to compel discovery in the First Action. And, as stated, Dr. Kim may also believe that Magistrate Judge Mason impermissibly refused to allow Dr. Kim to reformulate discovery responses that had narrowed the potential scope of the case—even though Dr. Kim appeared to be content with her framing of the case via her interrogatory responses prior to the entry of new counsel in March 2005. (First Action, D.E. 83.) However, the Sara Lee counterclaim seeking a declaration of non-infringement is general and sweeping, and a potential failure by Dr. Kim to successfully mount a challenge to various Sara Lee products and formulas in the First Action is not a basis to permit a duplicative second suit here. *Accord Oxbow Energy v. Koch Indus., Inc.*, 686 F. Supp. 278, 282 (D. Kan. 1988).

patent).) In the Second Action, Plaintiff's Complaint claims infringement of the '355 Patent by unspecified Sara Lee products. (D.E. 1.) Clearly, the claims (infringement of the '355 Patent by existing Sara Lee products), and the parties (Dr. Kim and Sara Lee) are the same in the two actions.

B.     The Two Actions Involve The Same Potential Available Relief

Turning to the question of whether the available relief is the same, Plaintiff concedes that there is no difference between the injunctive relief sought in both actions. (*See* D.E. 20 at 7 n.5.) Plaintiff also argues, however, that the amount of compensatory damages available to her in the First Action will depend upon the specific products that are accused of infringement. (*Id.* at 6 (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) for the proposition that "one factor considered in determining reasonable royalty damages is the profitability of the infringing products.").) Plaintiff asserts that, unlike the general nature of the products accused in the Second Action, the only products at issue now in the First Action are the D'Italiano, Buttertop and Healthy Choice products, and that the available relief in the two suits is accordingly different. (D.E. 20 at 6.)

The Court accepts the uncontroversial assertion that the amount of compensatory damages available in an infringement case depends in part upon the products proven to have infringed and their profitability. However, if Plaintiff's damages in the First Action end up being restricted to the D'Italiano, Buttertop, and Healthy Choice brands, the relief will have been narrowed by Plaintiff's own actions and inactions—in particular, by her failure to allege additional infringing products in a timely fashion (at least in Magistrate Judge Mason's view). Therefore, the Court finds that the potential available relief between the two actions is the same,

19

*i.e.*, injunctive relief and damages for all Sara Lee products infringing the '355 Patent, and so the two actions are duplicative.

      C.      Any Negative Consequences Plaintiff May Face in the First Action Do Not Warrant Permitting the Second Action To Proceed

In *Serlin*, the Seventh Circuit addressed a case where the district court had dismissed as duplicative a plaintiff's second action against a defendant. *See id.*, 3 F.3d at 224. The plaintiff's first action was in danger of being dismissed for untimely service, and the statute of limitations would have barred it from being refiled. *See id.* The Seventh Circuit noted this negative consequence, but still affirmed the district court's decision to dismiss the second action as duplicative of the first. *Serlin* explained that, "even if Serlin eventually does find himself out of court, that result will be entirely a consequence of the plaintiff's own failure to follow the rules." *Id.* As a result, no "special factors" were present that warranted the allowance of the second action. Likewise, Dr. Kim may find her relief in the First Action limited as a consequence of a failure to diligently pursue discovery and to supplement discovery responses, or to otherwise move with more expedition in the First Action. *Id.* If relief in the First Action is limited by a lack of diligence, or by a strategic, cost-benefit decision recalibrated after the ConAgra verdict came in or the entry of new counsel in the First Action, that is not Sara Lee's fault, nor is it the fault of the district courts.

Accordingly, the Court finds that the Second Action is duplicative of the First Action, and further does not find that any "special factors" counsel against dismissing the Second Action. *See id.* (citation omitted). Thus, the Court finds that the Second Action should be dismissed for the independent and adequate reason that it is duplicative of the First Action. *See id.* ("The

irrationality of tolerating duplicative litigation in the federal system is all the more pronounced where, as here, two federal judges sitting on the same district court are . . . devoting scarce judicial resources to the adjudication of the same charges by essentially the same plaintiffs against the same defendants.") (internal quotation marks and citation omitted).

III.     The Second Action Should Also Be Dismissed As Impermissible Claim Splitting

Moreover, and again independently, the Court finds that the prohibition against claim splitting bars Plaintiff's claim in the Second Action. "It is well established, under the doctrine of 'claim splitting,' that a party cannot avoid the effects of *res judicata* by splitting her cause of action into separate grounds of recovery and then raising the separate grounds in successive suits. Rather, a party must bring in one action all legal theories arising out of the same transaction or series of transactions." *American Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002) (collecting federal appellate authorities; internal citations omitted); *accord, e.g., Mars Inc. v. Nippon Conlux Kabushiki-Kaisha*, 58 F.3d 616, 619 (Fed. Cir. 1995) (same); *see also Wilson v. City of Chicago*, 120 F.3d 681, 687 (7th Cir. 1997) ("Two claims arising from the same facts are one claim for res judicata purposes, and may not be split . . . by making each claim the subject of a separate suit . . . .") (citation omitted). Unlike *res judicata*, which may only be applied to dispose of an action following a final judgment on the merits in a prior action, *see Cent. States, Southeast & Southwest Areas Pension Fund v. Hunt Truck Lines*, 296 F.3d 624, 628 (7th Cir. 2002), courts have applied the doctrine of claim splitting before there is a final judgment in a prior action. *See, e.g., Civix*, 2005 WL 1126906, at *4 (collecting authorities); *see also Serlin*, 3 F.3d at 223 (stating that a court may dismiss an action "for reasons of wise judicial administration [] whenever it is duplicative of a parallel action already pending in another federal

21

court") (internal quotation marks and citation omitted); *Walton v. Eaton Corp.*, 563 F.2d 66, 70 (3d Cir. 1977) (stating that the plaintiff clearly had "no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant.") (collecting authorities).[9]

Plaintiff cites *Jumpsport, Inc. v. Hedstrom Corp.*, No. C 04-0199 PJH, 2004 U.S. Dist LEXIS 20382 (N.D. Cal. Sept. 29, 2004), in arguing that the claim-splitting prohibition does not apply. (D.E. 20 at 9.) *Jumpsport*, however, does not direct a different result. First, as a matter of procedure, *Jumpsport* appears to be a dubious citation. The copy that Plaintiff appends to her brief is marked "NOT FOR CITATION." (*Id.*, Ex. D at 1.) Plaintiff suggests that the local rule of the Northern District of California expressly states only that such cases should not be cited to by "'this Court'" (*id.* at 9 n.8 (quoting Civil L.R. 7-14 of the Northern District of California)), and therefore the citation is permissible here. The Court will give Plaintiff the benefit of the doubt on this issue, although the Court notes that the relevant local rules of the Northern District

---

[9] Dr. Kim suggests that the Second Action is not barred under the claim-splitting principles embodied in *res judicata* law because Judge Mason's order barring evidence concerning the 438 claims in the First Action did "not preclude Dr. Kim from accusing those (and/or other) products in another action." (D.E. 20 at 14.) Dr. Kim's suggestion appears to be an attempt to invoke an exception to claim-splitting and *res judicata* principles, which exception applies where "the court in an earlier action expressly reserves the litigant's right to bring those claims in a later action." *Central States, Southeast & Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 629 (7th Cir. 2002) (internal quotation marks and citations omitted). This suggestion is misplaced. When the parties in the First Action were litigating whether Dr. Kim would be allowed to amend her interrogatory answers approximately a year after discovery had closed, so as to accuse 438 additional Sara Lee products and/or formulas that had been turned over during discovery, Dr. Kim (clearly aware of the risk of a claim-splitting bar) specifically asked Magistrate Judge Mason to "state that such ruling will not in any way affect Dr. Kim's ability to file a new Complaint specifically directed to the Sara Lee products currently at issue [*i.e.*, the 438 Sara Lee products]. . . ." (First Action, D.E. 88 at 14.) Magistrate Judge Mason's order contains no such reservation. (*See* First Action, D.E. 89.) As a result, the exception is inapplicable.

22

of California state that a litigant there should not cite any opinion designated as not for citation by any court (*see* Civil L.R. 3.4(d)), which may reflect that the District Court of the Northern District of California thought it too obvious to mention that decisions which its own judges deemed uncitable to the rendering court would not be cited elsewhere. In any event, it hardly inspires confidence when such an unpublished authority, which was expressly designated as uncitable thereafter to the district court that rendered it, is offered as support in another judicial district and case.[10]

Moreover, *Jumpsport* is distinguishable in any event. The district court in *Jumpsport* refused to find improper claim-splitting in a second patent suit, where the plaintiff had been precluded from litigating certain infringement claims in an earlier suit because the first court had, on defendant's motion, barred the litigation of claims concerning certain products for failure to comply with the local rules. *Id.*, 2004 U.S. Dist LEXIS 20382, at *4-5. However, the local rules in that instance required the "early and binding" declaration of patent claims, as the district court specifically noted in explaining its decision. *Id.* at *5-6. Sara Lee has not argued or even suggested that Dr. Kim's Second Action should be dismissed simply because Dr. Kim did not

---

[10] Dr. Kim also cites (*see* D.E. 20 at 4) an unpublished decision of the Seventh Circuit, *Williams v. Lomen*, 81 Fed. Appx. 871 (7th Cir. 2003), notwithstanding that such citation is in violation of Seventh Circuit Rule 53, which forbids citation of such unpublished decisions. The Court will give Dr. Kim the benefit of the doubt and assume that this improper citation was inadvertent, as the copy appended to Dr. Kim's brief somehow fails to include the boilerplate "do not cite" disclaimer that automatically appears, at least in the court's experience, on copies of such decisions when printed off of standard legal research services. While *Lomen* was not cited for a particularly meaningful proposition, Plaintiff's counsel are respectfully requested to be more careful in the future. At the very least, an experienced attorney writing or editing a draft of Dr. Kim's brief should have been skeptical once he or she saw the "Fed. Appx." cite, which virtually always, if not always, is used in connection with Seventh Circuit decisions for unpublished and uncitable opinions.

identify the 438 additional formulas during the early part of the First Action. Instead, Sara Lee argued that the claims were barred in the First Action because Dr. Kim knew about the full universe of Sara Lee formulas while discovery was open (*see, e.g.*, First Action, D.E. 86 at 1-2), never requested any further extension of discovery or seasonably moved to amend long-standing interrogatory responses (*id.*), and was, in Sara Lee's view, backtracking on representations that no further discovery was needed to adjudicate Dr. Kim's First Amended Complaint. (*See, e.g., id.* at 3.) Put differently, Sara Lee argues that Dr. Kim had a full and fair chance to pursue her claims in the First Action and either chose not to pursue the other claims or neglected to do so for approximately one year after the formulas were disclosed. Magistrate Judge Mason also did not rule on any basis, as was the case in *Jumpsport*, that Dr. Kim had failed to make an early disclosure of various potential claims under local rule. Under the circumstances, it appears that Dr. Kim had a full and fair chance to litigate in the First Action, and the instant case does not reflect any of the special circumstances that may have motivated the "NOT FOR CITATION" opinion of the *Jumpsport* district court.

Plaintiff's other cited authorities likewise do not direct a different result. For example, in *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320 (Fed. Cir. 1987), the Federal Circuit explained that, "[a] device not previously before the court, and shown to differ from those structures previously litigated," is not subject to a res judicata or claim-splitting bar. *Id.* at 1324. In the instant case, in contrast, Dr. Kim categorically maintains that the very products she would seek to litigate here *were* part of the First Action. (*See, e.g.*, D.E. 20 at 2 (asserting that, in the First Action, "Dr. Kim's Complaint and Amended Complaint properly allege patent infringement generally, notwithstanding of any of Judge Mason's conclusions to the contrary"); *id.* at 3

24

(similar); *id.* at 10 (stating that Dr. Kim's "general pleading of infringement [in the First Action was] . . . proper and encompasses **all** potentially infringing products, notwithstanding any of Judge Mason's conclusions to the contrary.") (double emphasis in original).) *Del Mar* also noted that the defendant seeking to invoke *res judicata* did not allege that the existence of the product at issue in the subsequent suit was even "known to Del Mar [the plaintiff], or was brought to the . . . attention" of the first court. *Id.* In the instant case, again in contrast, there is no question that Dr. Kim was aware of the products she would seek to litigate in this Second Action; indeed, Dr. Kim referenced the existence of such putative infringing products in her early discovery responses in the First Action, and she maintains that she properly alleged them in the First Action too. Dr. Kim cites no case (except perhaps for the *Jumpstart* decision, which is otherwise distinguishable anyhow) where a plaintiff asserts that he or she actually presented claims in a first lawsuit and is nevertheless allowed to litigate them anew in a second suit because the trial judge in the first suit improperly barred evidence concerning the claims. Again, Dr. Kim is free to appeal the First Action—although she would appear to need to establish not only that she alleged the claims, but that Magistrate Judge Mason abused his discretion in not allowing post-discovery amendment of interrogatory responses so as to place the claims at issue. *See generally, e.g.,* *Brosted v. Unum Life Ins. Co. of America*, 421 F.3d 459, 467 (7th Cir. 2005) (judgments may be affirmed on any basis fairly established in the record); *Cygan v. Wisc. Dep't of Corrs.*, 388 F.3d 1092, 1098 (7th Cir. 2004) (same). In any event, though, Dr. Kim offers no authority finding that a second action is properly maintained under facts analogous to this one.

The Second Action asserts the identical patent against the identical Sara Lee products that were at issue—or at least should have been pursued and put at issue—in the First Action.

Therefore, the Second Action should be dismissed for the independent reason that it is barred by the prohibition on claim splitting. *See, e.g.*, *Civix*, 2005 WL 1126906, at *4 (finding that plaintiff's second action was impermissible claim splitting, where the plaintiff sought "to assert in the Second Action the identical patents against the identical accused technology as in the Initial Action."); *American Stock Exchange*, 215 F.R.D. at 91 ("[A] plaintiff is precluded from raising a particular legal theory in a subsequent action even if she was not permitted to assert that particular theory in the first action due to her own dilatory conduct.") (citation omitted).

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6).

So ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Date: _2-1-06_____